The next matter, number 24-1154, Rene Sevelitte v. The Guardian Life Insurance Company of America et al. At this time, would counsel for the appellant please introduce themselves on the record to begin? Good morning, honorable members of the court. I am W. Kevin Fitzgerald, attorney for Rene Sevelitte. Speak up. I'm sorry, Your Honor. Good morning, honorable members of the court. I am W. Kevin Fitzgerald, attorney for Rene Sevelitte, the appellant. With permission of Judge Gelpi, if I could have three minutes for rebuttal? You may. Thank you. We are here this morning to examine the applicability of Mass General Law 190B Section 2804 as to the contract that was entered into between Rene Sevelitte and her husband, Joseph Sevelitte, as part of their divorce proceedings. The appellee has offered as support for the application of revocation on divorce, an affidavit of Valerie Ross, Esquire. This affidavit is prohibited as evidence in support of a motion of summary judgment as Ms. Ross is the attorney of record in the Middlesex County Propate Court for the estate of Joseph F. Sevelitte. Why is an affidavit from anybody prohibited? It contains hearsay, Your Honor, and especially an attorney of record for the estate to provide an affidavit which contains hearsay is prohibited by case law in Massachusetts. Excuse me? Let me reframe this, since I wrote the earlier decision. You have misinterpreted our prior decision. We did not rule in your favor. All we ruled was on 12B6. It was barely plausible that you had presented a theory that the presumption caused by the death of the policy owner did not apply. It went back. You refused to engage in court-ordered discovery and the rest on the basis that this court had already resolved the matter. We did not. Let's just take that as a given. The next argument is when the estate moves for summary judgment and supports it with and you choose not to put in any evidence, whether we can say on appeal that the district court's finding as to the intention of the parties from the documents and from the evidence of the practice of the bar in this area was error. There is no evidence in the record to support your opposing point of view because you chose not to put any evidence into the You are now making an argument that an attorney who is competent to testify as to the intent of her client and as to the documents that were drafted, taking the divorce as a matter of evidence had to be excluded. Even if that objection were preserved, it's an abuse of discretion standard of review. The district court thought it was appropriate. What was the abuse of discretion by the district court and is that all your case has come down to? No, Your Honor. If one were to accept the affidavit of Attorney Ross, it still affirms the fact that this is a contract which is an exception to the application of 190B Section 2804 and the contract exception as outlined in Affleck v. Parker. There are three exceptions to the application of 190B 2804. Those exceptions are the reaffirmation of the appointment in the governing document, the reference to the policy within the divorce decree, and the contract exception. A contract relating to the division of the marital estate. The agreement that has been presented before the court is a contract dealing with the marital estate and the division of those assets. The appellee further offers expert opinion of Attorney Ross that this is a contract, that the contract was in fact included in the order of the court for divorce nece, making this not only a contract exception, but a court order exception to the application of 190B 2804. Attorney D'Amato's expert opinion deals with the issue of the fact that she feels that Mrs. Civilletti retained some kind of unfair advantage. What the attorney did not include in her opinion was in fact that Mr. Civilletti maintained sole possession of a house at 13 Allen Court, Medford, that he acquired during the marriage in 2005 and that was preserved in his name alone under the terms of the contract. If that contract were modified for the inclusion of the value of that asset, then in fact Mr. Civilletti had a greater share of the assets of the marital estate. Chapter 190B 2804B1 states the contract exception revokes any revocable disposition. This use of language is important. The contract exception precludes the application of revocation on divorce. By the terms revoking the revocation simply means that no revocation of the beneficial interest designation ever occurs. If the revocation never occurs, then we're now arguing that Mr. Civilletti had interest in multiple residences at the time of divorce and that had to be balanced by the multiple insurance policies. But you didn't identify any record evidence to support those assertions. You put in no evidence to support those assertions. You're just now making an argument to us, asking us to assume facts that are not in evidence. The agreement is in evidence, Your Honor. No, no, the house. The house is in the agreement. It's noted in the agreement that Mr. Civilletti does remain in possession of that property. The valuation of the house that you're relying on? The valuation of the house that I am relying on is the assessment by the town of Medford. And you did not put that into evidence? Yes, Your Honor. Let me ask you from a procedural standpoint question. In this particular case, I'm aware that under the local summary judgment rule, the estate submitted 62 statements of uncontested facts. You submitted just one. And then at page 23 of the district court opinion, Judge Skobri, refusal to engage with the state's evidence arguments and single-minded reliance on the First Circuit decision render her unable to satisfy that burden. So not only were going to merits, but isn't there a procedural hurdle here? Because if you don't object to the uncontested statement of facts, they're deemed admitted. And that's what Judge Sorokin uses for his opinion. Your Honor, I did conduct discovery in another proceeding, parallel proceeding in the Massachusetts. Is it correct you did not object to your opponent's uncontested statement of facts? I believe I did, Your Honor, but the record will have to stand for itself on that point. Judge Sorokin says there's 62 uncontested statements. There's only one on your part. And that's maybe not even a counter-statement. That's your own statement. And you agree if you don't contest them, we must deem them true? For summary judgment purposes. Well, you can consider summary judgment de novo, and I would ask that that happen in this case. Oh, yeah, but we treat them as uncontested. The fact that this appeal is pending does show that I do contest those facts. Specifically, did I go through each one of those facts? No, I did not, Your Honor. Again, that's what I'm saying. Local Rule 56, and I forgot the sub-parentheses. But there's plenty of case law. If you don't object, you have case law from the circuit. If you don't object to the statement of facts, you don't contest those facts, and our team admitted it. I would still call the attention to the Court. In the section, or excuse me, Chapter 190B-2804-2D, provisions of a governing instrument that are not revoked by the section are given the effect as if the former spouse died immediately before the divorce or annulment. The contract has been admitted. The contract addresses the specific policy. The appellee states that the Section B-1, or excuse me, 190B, revokes the designation. Section B-1 actually states that this is the contract that was revoked. The contract exception is noted in Parker, and that the provisions of the governing document that are not revoked, as they were not in this case by 190B, are given the effect as if the spouse who had the right to make the revocation died immediately prior to the divorce. Thank you. You're going to have three minutes for rebuttal. Thank you. Please do introduce yourself on the record to begin. Good morning, and may it please the Court. Joshua Garrick on behalf of Robin Kaplis Cevillete, the personal representative of the estate of Joseph F. Cevillete. Counsel, and if you could start with my procedural question that I made to co-counsel. Sixty-two statements on a contested fact by your client, only one by the plaintiff. How does that spell out or, you know, benefit or, you know, lead to a revocation? Well, Judge Helpe, to answer your question, you're actually wrong on the facts. Yes, we had 62 undisputed statements, issues of fact in the joint statement of facts that we presented. They didn't have one. They had zero. The number one that you're referring to, I think, is Judge Sorokin's reference to the briefing where there was one paragraph of argument that they made below. They didn't contest any statement of fact. But even if it's one, and let's assume I'm right, or one or zero, there's still 61 statements of uncontested facts. So how do those benefit your client's position? It's a factual, well, it's based on the evidence to see if there's genuine issues of material fact. Right. So, again, Rule 56.1 says that in the event that these aren't refuted, they are deemed admitted. This Court applies that same standard, even applying it. Let me just, so the record is complete, you say Rule 56.1 of the local rules of the Massachusetts District Court. Yes. Yes. Local Rule 56.1 says that if those are not rebutted, then they are deemed admitted. And then this Court, even applying its de novo standard of review, applies that same standard, and that's under the SACWIS Procedure. Counsel, as I understand your case, you don't need the benefit of 60, 56.1, deeming it an admission because he did not object to win the case. Because on your evidence, and there's no evidence to the contrary, you win the case. Yes. So despite any waiver as to 56.1, your case doesn't depend on admissions because the evidence supports what the District Court judge found here, correct? Yes. Okay. Tell us why. As I said, I'm happy to explain all of the reasons that we've presented below. First of all, the divorce agreement itself starts with several express waivers of claims. A waiver of a state claim, a waiver of any, a general release of claims, a waiver of any property of the other. As we know from the statute in this Court's prior decision in the initial Cevalletti case, that there is a presumption of revocation unless it's provided by the divorce agreement. In the divorce agreement, there is nothing that says that the guardian policy shall name Renee Cevalletti as the beneficiary. There were two other provisions in divorce documents that named Renee as the beneficiary. The parties recognized that they would do so expressly. They did that with the child support provision, and then when they modified the agreement, when the child became emancipated, they did it in the American fruit policy. They did it expressly. The testimony from Attorney Ross was that we did that because we knew that those were going to be the beneficiaries. Our expert, Susan DiMatteo, said that's standard practice because practitioners in the probate and family courts know that in order to maintain an otherwise revoked interest in a policy, you have to state so expressly. Beyond that, the evidence showed that there were contradictions between Paragraph 6, dealing with the whole life policy, and Paragraph 2. Paragraph 6 said you can surrender that policy if you want, and if you do surrender the whole life policy, 50% of the cash value is paid out to Renee. Paragraph 2 says you can't. Paragraph 3 said you can't, and Paragraph 4 said you can't. You can't surrender the policy. So there was an inconsistency between the language of Paragraph 6 and Paragraph 2. We presented the negotiations, and the red line drafts of the agreement showing that this was not about the death benefits. This was, with respect to the whole life policy, this was about what do we do with the asset value. The initial draft didn't even include this provision. Then when it was added, the Attorney Karens, who represented Renee in the divorce proceedings, said, well, we want the cash surrender value, and then I think Attorney Ross says in her affidavit, the reason for that is because Renee wanted to reserve some money in the event of the son's marriage. Attorney Ross said, no, if we're going to surrender the policy and it's his, he gets to keep the money. They split the difference. They said if the policy is surrendered, then it will be split between the parties. So their position is, well, wait a minute, you can't surrender the policy, you can't cash it in, and if you do, we get an accreditor's claim and have the right to pursue this cause of action because you surrendered the policy. Paragraph 6 says expressly, you can surrender the policy, and it says what happens when it happens. So all of these provisions, all of the intent of the parties, the negotiations, the expert report which talks about the absurd result that would be realized if this is what would happen. It talks about Renee getting 80 percent, either 80 percent of the marital estate or in the alternative, $428,000 to secure what at most would have been $160,000 in child support obligation. These are just results that were opined that would not have received approval from the probate and family court. We did our job. We're facing nine different lawsuits, right, and we still did our job here to show that this is what this provision said. Now, we presented all of this evidence. They presented none to talk about, well, let's not take what Attorney Ross said and let's not look at what the experts said. Well, they could have presented an affidavit from Attorney Karens, the divorced woman, and had Renee herself say, no, this is what we meant. Renee's response when we asked, well, what's your interpretation, she said, Judge Lynch in the first Seveletti case said that this is our policy. And as Judge Lynch mentioned before, that's not what this court did. We're at our wit's end. We presented the evidence. They presented none. This court need go no further than the procedural pitfalls of... Most of his argument turns on his reading of a few cases under this statute. But as I read those cases, they involve express language. And as you point out, that is not what the record shows here. And Judge Lynch, I hate to do this to you. I actually disagreed a little bit with some of the... I know I'm not going to win this argument, but I actually disagreed a little bit with the first decision when I saw that there was a distinction made between the... Counsel, drop it. Well, in any event, the express language, you know, I'll leave it at that. Unless there's any other questions, we rest on the brief. Okay. Thank you very much, Counsel. And, Counsel, you have now, Mr. Fitzgerald, three minutes for rebuttal. Please reintroduce yourself on the record. Your Honors, again, W. Kevin Fitzgerald on behalf of Appellant Renee Civelletti. The agreement does have a waiver of estate claim. But prior to that waiver, there is, in that same paragraph, language that says that the parties may bring an action to enforce the terms of this specific contract. There's nothing in... That's what you did. It was, you know, you did not prevail. But you were able to bring the action to enforce the terms. Exactly. I'm just saying that this is not an inheritance issue. This is just a contract issue. The 190B does not say that the agreement has to specifically name or restate the beneficial interest. That is done by the paragraph 2D of 190B-2804 in saying that provisions of a governing instrument that are not revoked by this section are given the effect as if the former spouse died immediately before the divorce or annulment. Counsel, earlier you got a remand on the basis of an argument that the documents could plausibly be read. Plausibly be read on a 12B-6 motion to dismiss to support you. You now seem to be arguing that it isn't a matter of ambiguity and taking the evidence as to the intent, but as a matter of law, this court first time around and second time around should have ruled in your favor. Now, was not your position earlier? I don't see how you can switch horses at this point. I have always maintained that the agreement is an exemption. If I recall your Honor's opening remark in that session, you stated that it was understood that this was not a governing document, and I completely agreed with that. In your opinion, you said that you did not have to consider whether or not it was included. Well, that was for 12B-6. This is summary judgment. So it's a horse of a different color. All right, your Honor. Again, Attorney DiMatteo has stated that this is an agreement dividing the marital assets. She says that it's an unfair stipulation as to the amounts, but at the same time has said that term-link insurance is not considered in assessing the amounts. Most of the insurance that's involved here is termed this is the only whole life policy. There's been no disagreement between the parties that this is, in fact, Exhibit G-6. Okay. Thank you, Counsel. Thank you. We're going to recess until noon, and we have the final case for the morning. All rise.